NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JEREMY M., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, B.P., *Appellees.*

No. 1 CA-JV 20-0199
FILED 12-10-2020

Appeal from the Superior Court in Maricopa County
No. JD37717
The Honorable Randall M. Warner, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Department of Child Safety*

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge David D. Weinzweig joined.

**W I L L I A M S**, Judge:

**¶1** Jeremy M. ("Father") appeals the juvenile court's order terminating his parental rights to his child, B.P. For reasons that follow, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2** Father and Tawnee P. ("Mother")[1] are the biological parents of B.P., born in 2019. At birth, B.P. was substance exposed to amphetamines, opiates, and methadone. Mother admitted to using methamphetamine and heroin during her pregnancy, including using heroin with Father. Eleven days after B.P.'s birth, Father was released from prison for a drug-related felony conviction and then spent the next month in a half-way house.

**¶3** The Department of Child Safety ("DCS") took custody of B.P. within days after birth, placing the child with a maternal cousin. DCS filed a dependency petition, and the juvenile court found B.P. dependent as to both parents. As part of the family reunification case plan, DCS referred Father to Terros for substance abuse treatment, random drug testing, and mental health counseling, while recommending visitation and making transportation available. Although Father completed an initial assessment, he failed to participate in the recommended outpatient substance abuse treatment and strayed from his drug testing, often missing scheduled tests. Father's supervised visits with B.P. were also inconsistent, with Father canceling many times.

**¶4** DCS made a second referral of Father to Terros. After the second referral, Father received one urinalysis drug test, which was positive for fentanyl, and then did not test again, failing to complete the program. In March 2020, after the juvenile court changed the case plan to

---

[1] Mother's parental rights were also terminated, but she is not a party to this appeal.

severance and adoption, DCS moved to terminate Father's parental rights on grounds of chronic substance abuse and six months in an out-of-home placement. After a severance adjudication hearing, the juvenile court terminated Father's parental rights.

**¶5** This timely appeal followed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶6** We review a severance ruling for an abuse of discretion, accepting the court's factual findings unless clearly erroneous, *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004), and view the evidence in the light most favorable to sustaining the court's ruling, *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008). Because the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," we will affirm an order terminating parental rights if reasonable evidence supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)).

**¶7** "To justify termination of the parent-child relationship, the [juvenile] court must find, by clear and convincing evidence, at least one of the statutory grounds set out in [A.R.S. §] 8-533," *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000), which include chronic substance abuse, A.R.S. § 8-533(B)(3), and six months in an out-of-home placement for a child under age three, A.R.S. § 8-533(B)(8)(b). The court must also find, by a preponderance of the evidence, that termination is in the best interests of the child, *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).

*I.     DCS's Reasonable and Diligent Efforts to Reunify*

**¶8** Termination on grounds of chronic substance abuse under § 8-533(B)(3), or out-of-home placement under § 8-533(B)(8)(b), require DCS to prove it has made reasonable and diligent efforts to provide appropriate reunification services. A.R.S. § 8-533(B)(8) (a diligent effort to reunify is a statutory requirement for out-of-home placement grounds); *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453 ¶ 12 (App. 2005) ("To order severance on [chronic substance abuse] ground[s], the juvenile court must also have found that [DCS] had made reasonable efforts to reunify the

family. . . .”). DCS fulfills its statutory mandate when it provides a parent with the time and opportunity to participate in programs designed to help him or her become a minimally adequate parent. *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).

**¶9**        Father argues DCS's efforts to reunify the family were futile because DCS failed to properly accommodate Father's nighttime work schedule. However, "[DCS] is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Id.* While Father's schedule may have been challenging, Terros provided a variety of schedules to meet Father's specific needs. DCS demonstrated its willingness to accommodate when, at Father's request, services were transferred to a different location for his convenience. Additionally, when Father failed to complete his case plan, DCS re-referred him for the same services.

**¶10**        Based on this record, DCS made reasonable and diligent efforts to reunify the family by providing Father with services, including substance abuse treatment and groups, random drug testing, mental health counseling, visitation with B.P., and transportation.

## II.        *Chronic Substance Abuse*

**¶11**        Termination of a parent-child relationship can occur when a parent cannot discharge parental responsibilities due to a history of chronic substance abuse, and there are reasonable grounds to believe this condition will continue for a prolonged indeterminate period. A.R.S. § 8-533(B)(3).

**¶12**        Father failed to consistently participate in substance abuse services provided by DCS. Nevertheless, he argues his participation in substance abuse treatment in prison, AA and NA sessions, methadone treatments and testing shows no reasonable grounds existed to terminate his parental rights based upon his substance abuse.

**¶13**        "Chronic substance abuse is long-lasting but not necessarily constant substance abuse." *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 17 (App. 2016). The record shows Father's long-lasting history of drug abuse. Father was convicted of a drug-related offense involving heroin and thus imprisoned at B.P.'s birth. Father admitted to using drugs before he was imprisoned, including heroin with Mother while she was pregnant with B.P. Father also tested positive for fentanyl during the dependency and then refused to undergo further drug testing. While Father

insists he participated in programs, treatment, and testing outside of DCS's recommended services, he provided no evidence to support his testimony.

¶14 "[A] child's interest in permanency must prevail over a parent's uncertain battle with drugs." *Id.* On this record, sufficient evidence supports the court's finding that Father cannot discharge parental responsibilities because of his chronic substance abuse and will be unable to for a prolonged indeterminate period.

*III.    Six Months in Out-of-Home Placement*

¶15 Termination of the parent-child relationship can occur when a child under the age of three has been in out-of-home placement for a total of six months or longer and the parent has "substantially neglected or willfully refused to remedy the circumstances . . . including refusal to participate in reunification services offered by the department." A.R.S. § 8-533(B)(8)(b).

¶16 The record shows B.P. was in an out-of-home placement for 11 months at termination of Father's parent-child relationship. Nevertheless, because we affirm the juvenile court's order on statutory grounds of chronic substance abuse, we need not address whether termination was appropriate under six-months in an out-of-home placement under A.R.S. 8-533(B)(8)(b). *See Jesus M. v. Ariz. Dep't. of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds."). Father has not challenged the court's finding that termination of Father's parental rights was in B.P.'s best interests and the trial evidence fully supports that finding.

**CONCLUSION**

¶17 For the foregoing reasons, we affirm the juvenile court's order terminating Father's parental rights to B.P.



AMY M. WOOD • Clerk of the Court
FILED:    AA